1  Joseph R. Manning, Jr., Esq. (State Bar No. 223381)
   Michael J. Manning, Esq. (State Bar No. 286879)
2  Caitlin J. Scott, Esq. (State Bar No. 310619)
3  Tristan P. Jankowski, Esq. (State Bar No. 290301)
   **MANNING LAW, APC**
4  4667 MacArthur Blvd., Suite 150
5  Newport Beach, CA 92660
   Office: (949) 200-8755
6  ADAPracticeGroup@manninglawoffice.com

7

8

9  Attorneys for Plaintiff GUILLERMO ROBLES

10

11              UNITED STATES DISTRICT COURT

12         CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

13

| | |
|---|---|
| GUILLERMO ROBLES, an individual,<br><br>Plaintiff,<br><br>v.<br><br>THE MELTING POT RESTAURANTS, INC. d/b/a THE MELTING POT FONDUE RESTAURANT, a Florida corporation; and DOES 1-10, inclusive,<br><br>Defendant. | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF:**<br><br>1. **VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. §12181** *et seq.* [THEMELTINGPOT.COM]<br><br>2. **VIOLATIONS OF THE UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51** *et seq.* [THEMELTINGPOT.COM] |

Plaintiff, GUILLERMO ROBLES ("Plaintiff"), alleges the following upon information and belief based upon personal knowledge:

## INTRODUCTION

1. Plaintiff is a legally blind person who requires screen-reading software to read and access website content using his computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision. Others have no vision.

2. Plaintiff brings this civil rights action against Defendant THE MELTING POT RESTAURANTS, INC. d/b/a THE MELTING POT FONDUE RESTAURANT ("Defendant" or "The Melting Pot") for its failure to design, construct, maintain, and operate its website to be fully and equally accessible to and independently usable by Plaintiff and other blind or visually-impaired people. Defendant's denial of full, independent and equal access to its website, and therefore denial of its products and services offered thereby and in conjunction with its physical locations, is a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA") and California's Unruh Civil Rights Act ("UCRA").

3. Because Defendant's website, TheMeltingPot.com (the "website" or "Defendant's website"), is not equally accessible to blind and visually-impaired consumers in violation of the ADA, Plaintiff seeks a permanent injunction to cause a change in Defendant's corporate policies, practices, and procedures so that Defendant's website will become and remain accessible to blind and visually-impaired consumers.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and 28 U.S.C. § 1332.

5.     This court has supplemental jurisdiction over Plaintiff's non-federal claims pursuant to 28 U.S.C. § 1367, because Plaintiff's UCRA claims are so related to Plaintiff's federal ADA claims, they form part of the same case or controversy under Article III of the United States Constitution.

6.     This Court has personal jurisdiction over Defendant because it conducts and continues to conduct a substantial and significant amount of business in the State of California, County of Los Angeles, and because Defendant's offending website is available across California.

7.     Venue is proper in the Central District of California pursuant to 28 U.S.C. §1391 because Plaintiff and Defendant reside in this District, Defendant conducts and continues to conduct a substantial and significant amount of business in this District, Defendant is subject to personal jurisdiction in this District, and a substantial portion of the conduct complained of herein occurred in this District.

## PARTIES

8.     Plaintiff, at all times relevant and as alleged herein, is a resident of California, County of Los Angeles. Plaintiff is a blind, visually-impaired handicapped person, and a member of a protected class of individuals under the ADA, pursuant to 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

9.     Plaintiff is informed and believes, and thereon alleges Defendant THE MELTING POT RESTAURANTS, INC. is a Florida corporation and has its principal place of business in Tampa, Florida.  Defendant is registered to do business in the State of California and has been doing business in the State of California, including the Central District of California.  Defendant operates dozens of its fondue restaurants ("The Melting Pot fondue restaurants" or "Defendant's fondue restaurants" hereinafter) across the nation.  Several of these fondue restaurants are in the State of California, and a few of these fondue restaurants are located in the Central District of California.  The Melting Pot fondue restaurants constitute places

of public accommodation. Defendant's fondue restaurants provide to the public important goods and services. Defendant's website provides consumers with access to an array of goods and services including fondue restaurant locators, the ability to book reservations, fondue product descriptions, fondue, special pricing and other menu offerings, access to email club membership, The Melting Pot gift cards for purchase and redemption at physical fondue restaurants, fondue timers, as well as, many other benefits related to these goods and services.

10. The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

11. At all relevant times as alleged herein, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and/or scope of said agency and/or employment with the full knowledge and consent of each of the Defendants. Each of the acts and/or omissions complained of herein were alleged and made known to, and ratified by, each of the other Defendants (THE MELTING POT RESTAURANTS, INC. and DOE Defendants will collectively be referred to hereafter as "Defendant" or "The Melting Pot").

12. Defendant's fondue restaurants are public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). TheMeltingPot.com is a service, privilege, or advantage of The Melting Pot restaurants.

13. Defendant is subject to personal jurisdiction in this District. Defendant has been and is committing the acts or omissions alleged herein in the Central District of California that caused injury, and violated rights prescribed by the ADA and UCRA, to Plaintiff and to other blind and other visually impaired-consumers. A

substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in the Central District of California. Specifically, on several separate occasions, Plaintiff has been denied the full use and enjoyment of the facilities, goods, and services of Defendant's website in Los Angeles County. The access barriers Plaintiff encountered on Defendant's website have caused a denial of Plaintiff's independent, full and equal access multiple times in the past, and now deter Plaintiff on a regular basis from accessing Defendant's website. Similarly, the access barriers Plaintiff encountered on Defendant's website have deterred and impeded Plaintiff from visiting Defendant's brick-and mortar fondue restaurant locations.

### **THE AMERICANS WITH DISABILITIES ACT AND THE INTERNET**

14. The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

15. In today's tech-savvy world, blind and visually-impaired people have the ability to use computers and access websites using keyboards in conjunction with screen access software programs that vocalizes the visual information found on a computer screen. The technology is known as screen-reading software. In other words, the screen-reading software program is supposed to verbalize the information a sighted person would normally see when browsing on a particular website. Screen-reading software is currently the only method by which a blind or visually-impaired person may independently access the internet. Unless websites are designed to be read by screen-reading software, blind and visually-impaired persons are unable to fully access websites, and the information, products, and services contained thereon.

16. Blind and visually-impaired users of Windows operating system-enabled computers and devices have several screen reading software programs available to them. Some of these programs are available for purchase and other

programs are available without the user having to purchase the program separately. Job Access With Speech, otherwise known as "JAWS," is currently the most popular, separately purchased and downloaded screen-reading software program available for a Windows computer.

17. For screen-reading software to function as designed, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users.

18. The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.0, Success Criterion, Level A and AA of the Web Content Accessibility Guidelines ("WCAG 2.0" hereinafter). WCAG 2.0 are well-established guidelines for making websites accessible to blind, visually-impaired and other users of screen-reading software programs. WCAG 2.0 has been adopted, implemented and followed by most large business entities who want to ensure their websites are accessible to those individuals who use screen-reading software to access their websites and are offered to the public. Though WCAG 2.0 has not been formally adopted as the standard for making websites accessible, it is one of, if not the most, valuable resource for companies to operate, maintain, and provide a website that is accessible under the ADA to the public.

19. Inaccessible or otherwise non-compliant websites pose significant and common access barriers to blind and visually-impaired persons. Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following:

    a.    A text equivalent for every non-text element is not provided;

    b.    Title frames with text are not provided for identification and navigation;

    c.    Equivalent text is not provided when using scripts;

d. Forms with the same information and functionality as for sighted persons are not provided;

e. Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

f. Text cannot be resized without assistive technology up to 200 percent without loss of content or functionality;

g. If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h. Web pages do not have titles that describe the topic or purpose;

i. The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

j. One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k. The default human language of each web page cannot be programmatically determined;

l. When a component receives focus, it may initiate a change in context;

m. Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n. Labels or instructions are not provided when content requires user input;

o. In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to their specifications, elements may contain duplicate attributes and/or any IDs are not unique;

p. Inaccessible Portable Document Format (PDFs); and,

q. The name and role of all User Interface elements cannot be

programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

## FACTUAL BACKGROUND

20. Defendant offers its fondue restaurant's website, TheMeltingPot.com, to the public. The website offers features which should allow all consumers to access the goods and services which Defendant offers in connection with its physical locations. The goods and services offered by Defendant include, but are not limited to the following, which allow consumers to: find fondue restaurant locations; book reservations; find fondue product descriptions; find special pricing and other menu offerings; access email club membership; access The Melting Pot gift cards for purchase and redemption at physical fondue restaurants; access fondue timers; many other benefits related to these goods and services; as well as other services.

21. Based on information and belief, it is Defendant's policy and practice to deny Plaintiff, along with other blind or visually-impaired users, access to Defendant's website, and to therefore specifically deny the goods and services that are offered and integrated with Defendant's restaurants. Due to Defendant's failure and refusal to remove access barriers to its website, Plaintiff and visually-impaired persons have been and are still being denied equal access to The Melting Pot restaurants and the numerous goods, services, and benefits offered to the public through TheMeltingPot.com.

### Defendant's Barriers on TheMeltingPot.com Deny Plaintiff Access

22. Plaintiff is a blind and visually-impaired person, who cannot use a computer without the assistance of screen-reading software. However, Plaintiff is a proficient user of the JAWS screen-reader and uses it to access the internet. Plaintiff has visited TheMeltingPot.com on several separate occasions using the JAWS screen-reader.

23. During Plaintiff's visits to Defendant's website, Plaintiff encountered

multiple access barriers which denied Plaintiff full and equal access to the facilities, goods and services offered to the public and made available to the public on Defendant's website.

24. Due to the widespread access barriers Plaintiff encountered on Defendant's website, Plaintiff has been deterred, on a regular basis, from accessing Defendant's website. Similarly, the access barriers Plaintiff encountered on Defendant's website have deterred Plaintiff from visiting Defendant's brick-and-mortar fondue restaurants.

25. While attempting to navigate TheMeltingPot.com, Plaintiff encountered multiple accessibility barriers for blind or visually-impaired people that include, but are not limited to, the following:

   a. *Lack of Alternative Text* ("alt-text"), or a text equivalent.  Alt-text is invisible code embedded beneath an image or graphic on a website.  For an image or graphic to be accessible to a person using a screen-reader, it requires that alt-text be coded with each image or graphic so that screen-reading software can speak the alt-text where a sighted user sees the image or graphic.  Alt-text does not change the visual presentation, but instead a text box is read to the user when the user tabs or uses the arrow keys to reach the image with their cursor.  The lack of alt-text on images prevents screen readers from accurately vocalizing a description of the images.  As a result, visually-impaired The Melting Pot customers are unable to determine what information is on the website, browse fondue offerings, find fondue restaurant locations, check out Defendant's fondue specials or email subscription information, or make any purchases;

   b. *Empty Links That Contain No Text* causing the function or purpose of the link to not be presented to the user.  This can introduce confusion for keyboard and screen-reader users;

    c.  *Redundant Links* where adjacent links go to the same URL address which results in additional navigation and repetition for keyboard and screen-reader users; and

    d.  *Linked Images Missing Alt-text*, which causes problems if an image within a link contains no text and that image does not provide alt-text. A screen reader then has no content to present or vocalize to the user as to the function of the link, including information contained in PDFs.

26. Most recently, in 2017, Plaintiff attempted to do business with The Melting Pot on TheMeltingPot.com and Plaintiff encountered barriers to access on TheMeltingPot.com.

27. Despite past and recent attempts to do business with The Melting Pot on its website, the numerous access barriers contained on the website and encountered by Plaintiff, have denied Plaintiff full and equal access to Defendant's website. Plaintiff, as a result of the barriers on The Melting Pot website, continues to be deterred on a regular basis from accessing Defendant's website. Likewise, based on the numerous access barriers Plaintiff encountered on Defendant's website, Plaintiff has been deterred from visiting any of Defendant's brick-and-mortar fondue restaurant locations and from making purchases at such physical fondue restaurant locations.

**Defendant Must Remove Barriers To Its Website, TheMeltingPot.com**

28. Due to the inaccessibility of TheMeltingPot.com, blind and visually-impaired customers such as Plaintiff, who need screen-readers, cannot independently, fully and equally use or enjoy the facilities, goods and services The Melting Pot offers to the public on its website. The access barriers Plaintiff encountered on Defendant's website have caused a denial of Plaintiff's full, independent and equal access multiple times in the past, and now deter Plaintiff on a regular basis from accessing Defendant's website. In addition, the access barriers

Plaintiff encountered on Defendant's website have deterred Plaintiff from visiting and making purchases at The Melting Pot fondue restaurant locations.

29. If TheMeltingPot.com was equally and fully accessible to all, Plaintiff could independently navigate these websites and complete a desired transaction as sighted individuals do.

30. Through his many attempts to use Defendant's website, Plaintiff has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people.

31. Because a true commitment to make the website accessible, using the instructive examples given in the WCAG 2.0 Guidelines, would provide Plaintiff and other visually-impaired consumers with full and equal access to TheMeltingPot.com, Plaintiff alleges that The Melting Pot has engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

    a. Construction and maintenance of a website that is inaccessible to visually-impaired individuals, including Plaintiff;

    b. Failure to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually-impaired individuals, including Plaintiff; and,

    c. Failure to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers, such as Plaintiff, as a member of a protected class.

32. The Melting Pot therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

33. The ADA expressly contemplates the type of injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires:
"In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable

by individuals with disabilities….Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy. . ."

(42 U.S.C. § 12188(a)(2).)

34. Because Defendant's website has never been fully and equally accessible, and because Defendant lacks a corporate policy that is reasonably calculated to cause its website to become and remain accessible, Plaintiff invokes the provisions of 42 U.S.C. § 12188(a)(2), and seeks a permanent injunction requiring Defendant to retain a qualified consultant, acceptable to Plaintiff, ("Agreed Upon Consultant") to assist Defendant in making its website fully and equally accessible to all blind and visually-impaired consumers, including Plaintiff, using the WCAG 2.0 Guidelines as a valuable frame of reference. Plaintiff seeks that this permanent injunction require Defendant to cooperate with the Agreed Upon Consultant to:

    a. Train Defendant's employees and agents who develop the TheMeltingPot.com website on accessibility using the WCAG 2.0 guidelines as a valuable and significant resource to assist and identify examples of the various ways in which Defendant can achieve and maintain accessibility;

    b. Regularly check the accessibility of Defendant's website using the WCAG 2.0 guidelines as an instructive resource for ensuring content contained on the website is structured in the most fully and equally accessible way for all users;

    c. Regularly test end-user accessibility by blind or visually-impaired persons to ensure that Defendant's website is accessible using screen-reading software; and,

    d. Develop an accessibility policy that is clearly disclosed on its websites, with contact information for users to report accessibility-related problems which will then be investigated by Defendant and addressed within a reasonable timeframe.

35. If TheMeltingPot.com was accessible, Plaintiff and similarly situated

blind and visually-impaired people could independently find information about where fondue restaurants are located, book reservations, find fondue product descriptions, special pricing and other fondue menu offerings, access email club membership, purchase The Melting Pot gift cards for redemption at physical fondue restaurants, access fondue timers, as well as, many other benefits related to these goods and services available via Defendant's website.

36. Although Defendant may currently have centralized policies for maintenance and operation of its website, Defendant lacks a clear plan and policy reasonably calculated to make its website fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers, including Plaintiff.

37. Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use the Defendant's website in violation of their rights.

## FIRST CAUSE OF ACTION
## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. § 12181 *et seq.* [THEMELTINGPOT.COM]

38. Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this cause of action as though fully set forth herein.

39. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides:
> "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

(42 U.S.C. § 12182(a).)

40. The Melting Pot fondue restaurants are public accommodations within

the definition of Title III of the ADA, 42 U.S.C. § 12181(7). TheMeltingPot.com is a service, privilege, or advantage of The Melting Pot restaurants. TheMeltingPot.com is a service that is integrated with these locations.

41. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. (42 U.S.C. § 12182(b)(1)(A)(i).)

42. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. (42 U.S.C. § 12182(b)(1)(A)(ii).)

43. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

> "[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

(42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).)

44. The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§

12102(1)(A)-(2)(A).

45. Furthermore, Plaintiff has been denied full and equal access to TheMeltingPot.com, has not been provided services which are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct, despite recognizing the need for it to provide a website in which functionality and content are accessible to all. These violations are ongoing.

46. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff, requests relief as set forth below.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51 *et seq*. [THEMELTINGPOT.COM]

47. Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this Complaint necessary or helpful to state this cause of action as though fully set forth herein.

48. California Civil Code § 51 *et seq*. guarantees full and equal access for people with disabilities to the accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever. Defendant is systematically violating the UCRA, Civil Code § 51 *et seq*.

49. Defendant's restaurants are "business establishments" within the meaning of the Civil Code § 51 *et seq*. Defendant generates significant revenue from the sale of goods through its TheMeltingPot.com website. Defendant's website is a service provided by Defendant that is inaccessible to patrons who are blind or visually-impaired like Plaintiff. This inaccessibility denies blind and visually-impaired patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public. Defendant is violating the UCRA, Civil Code § 51 *et seq.*, by denying visually-impaired customers the goods

1  and services provided on its website.  These violations are ongoing.

2  50.  Defendant's actions constitute intentional discrimination against
3  Plaintiff on the basis of a disability, in violation of the UCRA, Civil Code § 51 *et*
4  *seq.*, because Defendant has constructed a website that is inaccessible to Plaintiff,
5  Defendant maintains the website in an inaccessible form, and Defendant has failed to
6  take actions to correct these barriers despite representations it is making every effort
7  to provide an accessible website.

8  51.  Defendant is also violating the UCRA, Civil Code § 51 *et seq.* because
9  the conduct alleged herein violates various provisions of the ADA, 42 U.S.C. §
10  12101 *et seq.*, as set forth above.  Section 51(f) of the Civil Code provides that a
11  violation of the right of any individual under the ADA also constitutes a violation of
12  the UCRA.

13  52.  The actions of Defendant violate UCRA, Civil Code § 51 *et seq.*, and
14  Plaintiff is therefore entitled to injunctive relief remedying the discrimination.

15  53.  Plaintiff is entitled to statutory minimum damages pursuant to Civil
16  Code § 52 for each and every offense.

17  54.  Plaintiff is also entitled to reasonable attorneys' fees and costs.

## PRAYER

19  WHEREFORE, Plaintiff prays pray for judgment against Defendant, as
20  follows:

21  1.  A Declaratory Judgment that, at the commencement of this action,
22  Defendant was in violation of the specific requirements of Title III of the ADA 42
23  U.S.C. § 12181 *et seq.*, and the relevant implementing regulations of the ADA, for
24  Defendant's failure to take action that was reasonably calculated to ensure that its
25  websites are fully accessible to, and independently usable by, blind and visually-
26  impaired individuals;

27  2.  A preliminary and permanent injunction enjoining Defendant from
28  further violations of the ADA, 42 U.S.C. § 12181 *et seq.*, and/or the UCRA, Civil

Code § 51 *et seq.* with respect to its website, TheMeltingPot.com;

3. A preliminary and permanent injunction requiring Defendant to take the steps necessary to make TheMeltingPot.com readily accessible to and usable by blind and visually-impaired individuals;

4. An award of statutory minimum damages of $4,000 per violation pursuant to § 52(a) of the California Civil Code;

5. For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, pursuant to 42 U.S.C. § 12188(a)(1), and California Civil Code § 52(a);

6. For pre-judgment interest to the extent permitted by law;

7. For costs of suit; and

8. For such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully requests a trial by jury on all appropriate issues raised in this Complaint.

Dated: February 14, 2017     **MANNING LAW, APC**

By: /s/ Joseph R. Manning Jr., Esq.
Joseph R. Manning Jr., Esq.
Michael J. Manning, Esq.
Caitlin J. Scott, Esq.
Tristan P. Jankowski, Esq.
Attorneys for Plaintiff